UNITED STATES DISTRICT COURT

                     DISTRICT OF NEW HAMPSHIRE

<u>Carnival Fruit Co., Inc.</u>,
     Plaintiff

     v.                                Civil No. 04-cv-252-SM
                                       Opinion No. 2006 DNH 010
<u>Narotam S. Grewal</u>,
     Defendant


                            **O R D E R**


     Carnival Fruit Co., Inc. ("Carnival") has sued Narotam S. Grewal under the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a, <u>et seq.</u>, to recover the cost of produce allegedly shipped to but not paid for by four restaurants in which Grewal held an ownership interest.  Before the court are cross motions for summary judgment.  For the reasons given, defendant's motion for summary judgment is granted, and plaintiff's motion for summary judgment is denied.


                       **Summary Judgment Standard**

     Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P.

56(c).  "The role of summary judgment is to pierce the boilerplate of the pleadings and provide a means for prompt disposition of cases in which no trial-worthy issue exists." Quinn v. City of Boston, 325 F.3d 18, 28 (1st Cir. 2003) (citing Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000)).  When ruling on a party's motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. See Lee-Crespo v. Schering-Plough Del Caribe Inc., 354 F.3d 34, 37 (1st Cir. 2003) (citing Rivera v. P.R. Aqueduct & Sewers Auth., 331 F.3d 183, 185 (1st Cir. 2003)).

**Background**

Defendant Grewal owns a controlling interest in On Lake Investments.  On Lake, in turn, incorporated Global Restaurants Concepts, which was subsequently renamed Prezzo International, Inc. ("Prezzo").  Prezzo served as a holding company for four restaurants in Florida:  Prezzo Aventura, Prezzo Boca, Prezzo Wellington, and Prezzo Kendall (collectively "the restaurants" or "the Prezzos").  On Lake held one hundred percent of the stock in Prezzo.  Prezzo, in turn, was the sole member of each of four

limited liability companies established to operate the four Prezzo restaurants.

Carnival sold perishable agricultural commodities (i.e., fresh produce) to the Prezzos.  Carnival's relationship with the Prezzos began in late September 2002, when each opened a credit account with Carnival.  Each credit application included a handwritten notation "Net 45 days" under the heading "terms requested."  At her deposition, Kathleen Burch, Carnival's credit manager, stated that the request for forty-five day credit was automatically rejected.  In an affidavit she said that "[p]ayment for the produce was due ten (10) days from receipt of the produce."  (Pl.'s Mot. Summ. J., Ex. 10 (Burch Aff.) ¶ 12).  However, most of the invoices submitted as exhibits to that affidavit unequivocally state "WEEKLY – 28 DAYS" in the box labeled "terms," and the invoices bearing that notation provide for a "due date" approximately 28 days after the "invoice date." (See Burch Aff., Attach. 2.)

At some point in the Spring of 2003, the Prezzos got behind in their payments to Carnival.  Burch responded by putting them

on COD status and then halting deliveries.  After the restaurants paid their overdue accounts, Carnival began shipping them produce again, on credit.  Shipments resumed on about July 7, 2003.  By early or mid-August, the restaurants were again behind in their payments.  Burch was able to secure partial payment of the arrearage, then shifted the restaurants to COD, and, finally, stopped delivering produce.

In an effort to retain the Prezzos as customers during the winter season, Burch, at the direction of Carnival's president, devised a payment plan.  That plan called for the restaurants to pay down the arrearage in four installments, the first on October 15, then on October 22, November 22, and December 22, 2003.  Burch faxed a letter detailing the payment plan to Sue Bailey, an accounting consultant for Prezzo and the restaurants, on October 7.  Bailey signed the letter and faxed it back to Burch on October 10.  (Def.'s Mot. Summ. J., Ex. D (Bailey Aff.) ¶ 6.)  Although Burch says she never received Bailey's response, Carnival does not dispute that Bailey faxed the Prezzos' acceptance of its offer to Burch.  (Burch Aff. ¶ 16.)

In any event, Carnival received no payment on October 15, so it immediately stopped shipping produce to the Prezzos. In November or December of 2003, the Prezzos closed. At the time, they owed Carnival, in the aggregate, approximately $79,342.06 for produce delivered between July 7 and October 15, 2003.[1]

In this suit, Carnival seeks to recover its remaining losses on the Prezzo accounts directly from Grewal. Carnival offers three legal theories entitling it to recover, all arising from the Perishable Agricultural Commodities Act. Specifically, Carnival asserts that: (1) Grewal is liable for failing to pay for produce supplied by Carnival, see 7 U.S.C. § 499e(a) (Count 1); (2) Grewal, as the "sole member and manager" of Prezzo, "was in a position of control over the PACA trust assets belonging to" Carnival but failed to direct the corporation to preserve those assets and, therefore, is liable for unlawfully dissipating the assets of a trust arising in Carnival's favor under PACA, see

---

[1] The Prezzos owed Carnival another $5,651.30 for non-produce items. In a lawsuit brought under PACA against the four restaurants and Grewal in the Southern District of Florida, Carnival obtained default judgments against three of the restaurants, recovering $8,602.02. In addition, the district court in Florida granted Carnival's motion for voluntary dismissal, without prejudice, of its claims against the fourth restaurant and Grewal.

5

7 U.S.C. § 499e(c)(5) (Count 2); and (3) Grewal, as the person in control of Prezzo and as a dealer and commission merchant, is liable for failing to pay PACA trust funds to Carnival, see id. (Count 3).  Plaintiff also seeks prejudgment interest, costs, and fees (Count 4).

## Discussion

Defendant moves for summary judgment on grounds that: (1) he is not subject to liability under PACA because he was not a "dealer" within the meaning of the statute; (2) as a mere investor, he cannot be held personally liable for PACA violations by the restaurants or by Prezzo; and (3) Carnival waived its protections under PACA when it extended credit to the restaurants beyond the maximum term allowed by the statute.  Plaintiff objects categorically and moves for summary judgment.

Assuming Grewal is a produce dealer for PACA purposes, or may properly be held accountable for the debts of a dealer, and further assuming that Carnival did not forfeit its PACA rights by selling the Prezzos produce on twenty-eight-day terms without a prior written agreement – all debatable propositions – Carnival's

claim still fails as a matter of law.  The parties' agreement, in October 2003, to payment terms longer than those allowed under PACA and its implementing regulations precludes Grewal's liability under the Act.

The Perishable Agricultural Commodities Act provides "extraordinary protection" for those who sell fresh produce by effectively imposing a trust upon proceeds from the resale of the produce until the bill is paid.  Am. Banana Co. v. Republic Nat'l Bank, 362 F.3d 33, 45 (2d Cir. 2004).  That protection, however, is intentionally limited to those who sell on a short-term credit basis.  Id.  Ordinarily, for a party in plaintiff's position to enjoy the benefit of a PACA trust, it must require payment for the produce "within 10 days after the day on which the produce is accepted."  7 C.F.R. § 46.2(aa)(5).  A longer payment term is allowed, but only if the seller and buyer "reduce their agreement to writing before entering into the transaction and maintain a copy of the agreement in their records."  7 C.F.R. § 46.2(aa)(11).  However, "[t]he maximum time for payment for a shipment to which a seller, supplier, or agent can agree and still qualify for coverage under the trust is 30 days after

receipt and acceptance of the commodities." <u>Hiller Cranberry Prods., Inc. v. Koplovsky</u>, 165 F.3d 1, 5 (1st Cir. 1999) (quoting 7 C.F.R. § 46.46(e)(2)).

Here, defendant argues that Sue Bailey's acceptance of Carnival's October offer of a payment plan disqualified Carnival from protection under PACA.  Carnival does not dispute that Bailey faxed Burch a signed copy of the letter outlining the terms of the payment plan, thereby accepting those terms. Bailey's return of the letter to Burch, with written indication of agreement, was sufficient to accept Carnival's offer and form an agreement:

> "To establish a contract . . . there must be . . . an offer and an acceptance thereof in accordance with its terms . . . .  (W)hen the parties to such a contract are at a distance from one another and the offer is sent by mail . . . the reply accepting the offer may be sent through the same medium, and the contract will be complete when the acceptance is mailed . . . properly addressed to the party making the offer and beyond the acceptor's control."

<u>Cushing v. Thomson</u>, 118 N.H. 292, 294 (1978) (quoting <u>Busher v. N.Y. Life Ins. Co.</u>, 72 N.H. 551, 552 (1904)).  Here, the same

medium of communication – facsimile transmission – was used to make the offer and to accept it.

Moreover, based upon the undisputed factual record, the October 2003 agreement extended the time for payment beyond the thirty days permitted by 7 C.F.R. § 46.46(a)(2).  At the time Carnival proposed the payment plan, the Prezzos were in default on payments due for produce delivered in July, August, and September.  Kathleen Burch stated that if the October 15 payment had been made, it would have been applied to the oldest outstanding invoices, and each successive payment would be applied to the oldest remaining invoices.  (Def.'s Mot. Summ. J., Ex. C (Burch. Dep.) at 76-77.)  It cannot be reasonably contested that the agreement extended the Prezzos' payment obligations by more than thirty days after delivery for all of the produce included in the past due invoices.

The parties dispute whether a produce seller loses PACA trust protection by making a post-default agreement to accept payment more than thirty days after delivery.  The disproportionate weight of authority favors defendant's position;

all three circuits that have considered the question decided that a seller does relinquish PACA trust protection by entering into a post-default agreement to accept payment more than thirty days after delivery.  See American Banana, 362 F.3d at 43-45; Patterson Frozen Foods, Inc. v. Crown Foods, Int'l, Inc., 307 F.3d 666, 669-70 (7th Cir. 2002) (citing Greg Orchards & Produce, Inc. v. Roncone, 180 F.3d 888, 892 (7th Cir. 1999) ("By disqualifying suppliers who enter into post-default agreements that violate PACA, we can ensure that the extraordinary protection provided by PACA is not enlarged beyond its intended scope.")); Tom Lange Co. v. Lombardo Fruit & Produce Co. (In re Lombardo Fruit & Produce Co.), 12 F.3d 806, 809-10 (8th Cir. 1993).  Plaintiff suggests that those cases were wrongly decided, but offers little by way of support or persuasive analysis.

     In American Banana, the most recent and most detailed consideration of the issue, the court turned to the legislative history of the 1984 amendments to PACA, which "makes clear that Congress intended trust protection to extend solely to cash and short-term credit transactions."  362 F.3d at 43.  The court then considered "whether there is a meaningful difference between pre-

transaction and post-default agreements." Id. at 44.  In holding that there is not, the court explained that

> the result of a post-default agreement extending the payment period beyond thirty days is no different than that of a pre-transaction agreement doing the same: both are inconsistent with the prompt-payment objective, which is fundamental to PACA.

Id.  Finally, the court pointed out that the extension of PACA trust protection to sellers who give long-term credit encourages the extension of credit to buyers who are, or may be, dangerously close to insolvency, thus keeping them in business and increasing financial risks to others.  Id. at 44-45.  In short, plaintiff has offered no persuasive reason to reject the holding in American Banana that

> [s]ellers who are willing and able to enter into such [long-term credit] agreements – whether pre-transaction or post-default – neither need nor deserve the elevated priority they receive under PACA's trust provision.

Id. at 45.


Because Carnival extended credit beyond thirty days for all the purchases at issue here, it is not entitled to the trust protections afforded under PACA.  Plaintiff raises only PACA

claims in its complaint.  Accordingly, defendant is entitled to judgment as a matter of law on all counts.

## Conclusion

For the reasons given, defendant's motion for summary judgment (document no. 8) is granted, and plaintiff's motion for summary judgment (document no. 10) is denied.  The clerk of the court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

January 31, 2006

cc:  Donald J. Perrault, Esq.
     Daniel J. Will, Esq.